UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-cv-23366-ALTMAN

**LEVAR CURTIS JOHNSON**,
*as trustee of* **LEVAR CURTIS
JOHNSON TRUST**,

    *Plaintiff*,

v.

**AUGUSTUS GEORGE ELEFTHERIO**, *et al.*,

    *Defendants*.
_____/

## ORDER GRANTING MOTION TO DISMISS

Our Plaintiff, Levar Curtis Johnson, once lived at 1176 NW 49th Street in Miami, Florida (the "Property"). *See* Amended Complaint [ECF No. 9] at 4. Johnson says that, over the past six years, the Defendants have engaged in a "coordinated scheme to fraudulently seize Plaintiff's property" by conducting "a pattern of racketeering activity that include[s] mail fraud, wire fraud, bankruptcy fraud, and obstruction of justice." *Id.* at 2. The Defendants have jointly moved to dismiss the Amended Complaint, arguing that "[t]his lawsuit is the plaintiff's attempt to relitigate his state court foreclosure action." Joint Motion to Dismiss ("Motion") [ECF No. 34] at 1.[1] We now **GRANT** the Motion.

### THE FACTS

Johnson inherited the Property on July 29, 2009, after his father—Jimmie Johnson—passed away. *See* Complaint at 5. Johnson lived on the Property without incident until December 3, 2018, when Defendant Bank of New York Mellon—represented by Defendant Orlando Deluca—"filed a foreclosure complaint in Miami-Dade County Circuit Court (Case No. 2018-040275-CA-01), asserting

---

[1] Johnson filed a Response to the MTD. *See* Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss ("Response") [ECF No. 35]. The Defendants didn't reply. *See generally* Docket.

that the bank held the original promissory note and had standing to foreclose on [the Property]." *Id.* at 6; *see also* Complaint for Foreclosure [ECF No. 9-2] at 20–23.[2] The Bank alleged that Johnson "failed to make any mortgage payments since early 2014." *Bank of N.Y. Mellon v. Johnson*, 2022 WL 6575784, at *1 (S.D. Fla. Sept. 30, 2022) (Scola, J.). Johnson claims that Bank of New York Mellon (through Deluca) fraudulently represented that "original documents had been filed with the court," even though it could only provide "copies" of the "promissory note and mortgage." Amended Complaint at 7–8. The Bank "obtained a final judgment of mortgage foreclosure on October 12, 2022." *Johnson v. Miami-Dade Cnty. Sheriff*, 2022 WL 14813741, at *2 (S.D. Fla. Oct. 26, 2022) (Bloom, J.). The Third DCA summarily affirmed the state court's judgment on March 15, 2023. *See Johnson v. Bank of N.Y. Mellon*, 359 So. 3d 1169, 1169 (Fla. 3d DCA 2023), *rev. denied*, 2023 WL 3174187 (Fla. May 1, 2023).

Over the next two years, Johnson alleges that several of the Defendants undertook certain fraudulent actions to deprive Johnson of his right to inhabit the Property. When Johnson filed for bankruptcy, Defendant Reka Beane (another attorney representing the Bank) "filed an objection to Plaintiff's bankruptcy plan . . . falsely asserting that [the Bank] had an interest in Plaintiff's property." Amended Complaint at 10. Another attorney representing the Bank, Defendant Toni Townsend, then "filed a proof of claim in Plaintiff's bankruptcy case," inaccurately claiming that the Bank had "granted [Defendant] Shellpoint Mortgage Servicing rights over the [P]roperty." *Ibid.* When Johnson contacted Shellpoint for "clarity" about its "legal authority over the loan," Shellpoint refused to give Johnson any information and "merely stated that they lacked authorization to release loan information to third parties." *Id.* at 10–11. Shellpoint also hired Defendant Jorge De Pina to post letters at the Property, "stating that [De Pina] had been retained to manage, maintain, and sell the property." *Id.* at 12. These

---

[2] "A copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes." FED. R. CIV. P. 10(c); *see also Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016) ("A district court can generally consider exhibits attached to a complaint in ruling on a motion to dismiss[.]").

acts, Johnson explains, "falsely asserted Shellpoint's authority over the property, despite the unresolved issues regarding the bank's standing and documentation." *Ibid.*

On May 11, 2023, the Bank purchased the Property at the foreclosure sale. *See id.* at 11; *see also* Certificate of Title [ECF No. 9-2] at 225. Johnson says that this "fraudulent auction sale deprived Plaintiff of his property based on falsified claims of ownership" and "constitutes wire fraud under 18 U.S.C. § 1343." Amended Complaint at 11–12. In any event, Johnson received a letter from Defendant Gregory A. Wallach on May 24, 2023, "claiming that the property had been conveyed to a new owner and that his office represented this owner." *Id.* at 13. During this time, both De Pina and Wallach engaged in tactics meant "to pressure Plaintiff into leaving without resolving the underlying legal issues." *Id.* at 14. De Pina continued to send letters to Johnson, offering between $3,000 and $5,000 for Johnson "to vacate . . . without resolving the outstanding legal issues." *Id.* at 14–15. Meanwhile, on August 30, 2023, Wallach moved for a "writ of possession with the Miami-Dade County Circuit Court on behalf of [the Bank]" to "take possession of the [P]roperty, despite ongoing legal challenges regarding the foreclosure process." *Id.* at 15.

On October 3, 2023, a state-court judge granted the writ of possession—over Johnson's objections—"allowing the purchaser to take possession of Plaintiff's property." *Id.* at 17; *see also* Order Granting Motion for Writ of Possession [ECF No. 9-3] at 35–36. Johnson was served with a "Final Notice of Eviction" by the Miami-Dade Police Department on October 25, 2023. *See* Amended Complaint at 17; *see also* Final Notice of Eviction [ECF No. 9-3] at 45.

A week later, on October 31, 2023, the Bank "allegedly sold Plaintiff's property to [Defendant] Augustus George Eleftherio, and a deed was created to transfer ownership." Amended Complaint at 18. Eleftherio contacted Johnson several times in an "attempt[ ] to pressure Plaintiff to vacate." *Ibid.* When that didn't work, Eleftherio and his attorney (Defendant David Abrams) filed an action for ejectment in state court and relied on "a series of questionable filings and actions aimed at establishing

3

ownership through fraudulent means." *Id.* at 19. In early January 2024, Eleftherio, Abrams, Eleftherio's wife (Defendant Erin Fransciska Skibicki-Eleftherio), and an "unidentified locksmith" "forcibly entered Plaintiff's property by drilling out the back door locks and installing new locks" and "denied [Johnson] access to his property." *Id.* at 20. Abrams and the Eleftherios then returned with police officers "in an attempt to forcibly remove [Johnson]," but Johnson "refused to vacate the property or allow the removal of his belongings." *Id.* at 20–21. Throughout the months of January and February 2024, Johnson sent the Bank, Abrams, and the Eleftherios certified mail demanding that they "address issues regarding the foreclosure and property ownership" and explain "their involvement in the property's ownership and possession disputes." *Id.* at 21. None of the Defendants responded. *See id.* at 22.

On February 20, 2024, Abrams filed "an Unlawful Detainer complaint" in state court, "seeking to remove Plaintiff from his property." *Id.* at 22–23. The Eleftherios then executed a "Quit Claim Deed," which transferred the Property from them to Defendant Birch Homes LLC. *See id.* at 23. On May 9, 2024, the Eleftherios and several Miami-Dade County police officers "forcefully evicted Plaintiff from his property and discarded his belongings onto the front lawn." *Id.* at 24. To "assert his legal claim to the property and challenge the fraudulent actions taken by the defendants to seize control," Johnson filed a deed with the Miami-Dade County Recorder's Office on June 20, 2024, based on "the terms of prior private correspondence with the [D]efendants." *Id.* at 25. This newly recorded deed caused even more trouble for Johnson, as Abrams and the Eleftherios filed a quiet-title action in state court "to extinguish Plaintiff's interest in the property," *and* Johnson was arrested "on criminal charges" for creating and recording the deed. *Id.* at 25–26.[3]

---

[3] These quiet-title and felony cases are the subject of a § 1983 case that's also pending before us. *See generally Johnson v. Hillquist*, 2025 WL 295156, at *1 (S.D. Fla. Jan. 24, 2025) (Altman, J.).

## THE LAW

A motion challenging our subject-matter jurisdiction under FED. R. CIV. P. 12(b)(1) may take the form of either a "facial attack" or a "factual attack." *Lawrence v. Dunbar*, 919 F.2d 1525, 1528 (11th Cir. 1990). "A 'facial attack' on the complaint 'require[s] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion.'" *McElmurray v. Consol. Gov't of Augusta–Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007) (quoting *Lawrence*, 919 F.2d at 1529). A "factual attack" instead "challenges the existence of subject matter jurisdiction using material extrinsic from the pleadings, such as affidavits or testimony." *Stalley ex rel. United States v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1233 (11th Cir. 2008). In considering a factual attack on jurisdiction, "a district court is not limited to an inquiry into undisputed facts; it may hear conflicting evidence and decide for itself the factual issues that determine jurisdiction." *Colonial Pipeline Co. v. Collins*, 921 F.2d 1237, 1243 (11th Cir. 1991).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To meet this "plausibility standard," a plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ibid.* (citing *Twombly*, 550 U.S. at 556). The standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ibid.* (quoting *Twombly*, 550 U.S. at 555). "[T]he standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the required element." *Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309–10 (11th Cir. 2008) (quoting *Twombly*, 550 U.S. at 545). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted

unlawfully." *Iqbal*, 556 U.S. at 678. On a motion to dismiss, "the court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff." *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016). And the "moving party bears the burden to show that the complaint should be dismissed." *Spring Solutions, Inc. v. Fils-Amie*, 44 F. Supp. 3d 1224, 1229 (S.D. Fla. 2014) (Cohn, J.) (quoting *Mendez-Arriola v. White Wilson Med. Ctr., P.A.*, 2010 WL 3385356, at *3 (M.D. Fla. Aug. 25, 2010) (Rodgers, J.)).

Although "*pro se* pleadings are held to a more lenient standard than pleadings filed by lawyers," *Abram-Adams v. Citigroup, Inc.*, 491 F. App'x 972, 974 (11th Cir. 2012), that "leniency does not give a court license to serve as *de facto* counsel for a party or rewrite an otherwise deficient pleading in order to sustain an action," *Curtiss v. Comm'r of Soc. Sec.*, 856 F. App'x 276, 276 (11th Cir. 2021) (cleaned up). *Pro se* litigants cannot "simply point to some perceived or actual wrongdoing and then have the court fill in the facts to support their claim. . . . Judges cannot and must not fill in the blanks for *pro se* litigants; they may only cut some linguistic slack in what is actually pled." *Hanninen v. Fedoravitch*, 2009 WL 10668707, at *3 (S.D. Fla. Feb. 26, 2009) (Altonaga, J.) (cleaned up).

## ANALYSIS

Johnson's Amended Complaint asserts four counts against the Defendants.[4] Count I is a civil RICO claim under 18 U.S.C. §§ 1962 and 1964 based on the Defendants' "fraudulent legal actions, fraudulent filings, and other deceptive practices to defraud Plaintiff and illegally seize his property." Amended Complaint at 27. These "numerous predicate acts" include mail fraud, wire fraud, bankruptcy fraud, and obstruction of justice. *See id.* at 29–35 (listing all the predicate acts). Count II of seeks to quiet title under FLA. STAT. § 65.011, thus "affirming [Johnson's] rightful ownership of

---

[4] The Amended Complaint labels a fifth count as "Damages." Amended Complaint at 42. Of course, a request for damages "is not a separate, freestanding cause of action, but is rather a remedy that can be sought based on any properly pled cause of action." *SE Prop. Holdings, LLC v. Welch*, 65 F.4th 1335, 1349 (11th Cir. 2023) (cleaned up).

6

[the Property], and declaring that all claims, liens, and encumbrances placed on the title by Defendants are fraudulent, invalid, and void." *Id.* at 39. Count III claims that the Defendants breached their contracts with Johnson by failing to respond to Johnson's "private correspondence and fee schedules[.]" *Id.* at 39. Finally, Count IV alleges that the Defendants committed common-law fraud "by using false documents, including a fraudulent power of attorney and fraudulent deeds, to initiate improper foreclosure actions and seize control of Plaintiff's property." *Id.* at 41.

The Defendants have moved to dismiss the Amended Complaint for lack of subject-matter jurisdiction and for failure to state a claim. Their primary argument is that we lack jurisdiction under the *Rooker-Feldman*[5] doctrine because Johnson's Amended Complaint "directly calls upon this Court to reject [the state-court foreclosure] judgment as improperly entered." Motion at 5. To the extent we find the *Rooker-Feldman* doctrine inapplicable, the Defendants argue (in the alternative) that none of Johnson's four counts state a claim upon which relief may be granted. *See generally id.* at 6–10. After careful review, we find that we lack subject-matter jurisdiction over Counts I, II, and IV of the Amended Complaint under the *Rooker-Feldman* doctrine and that Count III must be dismissed under Rule 12(b)(6).

## I. The *Rooker-Feldman* Doctrine

The *Rooker-Feldman* doctrine "provides that 'lower federal courts are precluded from exercising appellate jurisdiction over final state-court judgments.'" *Nicholson v. Shafe*, 558 F.3d 1266, 1268 (11th Cir. 2009) (quoting *Lance v. Dennis*, 546 U.S. 459, 463 (2006)). In other words, the doctrine applies only to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

---

[5] *See Rooker v. Fidelity Tr. Co.*, 263 U.S. 413 (1923); *Dist. of Columbia Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983).

The Eleventh Circuit has warned district courts about the "narrow" scope of the *Rooker-Feldman* doctrine, even going so far as to say that "it will *almost* never apply" since it only divests federal courts of jurisdiction when the plaintiff's "injury [is] caused by the [state-court] judgment itself." *Behr v. Campbell*, 8 F.4th 1206, 1212 (11th Cir. 2021) (emphasis added). Of course, "almost is not never." *Efron v. Candelario*, 110 F.4th 1229, 1235 (11th Cir. 2024). A plaintiff cannot avoid application of the *Rooker-Feldman* doctrine by "request[ing] something other than the vacatur of a state decision." *Ibid.* Nor can the plaintiff avoid this jurisdictional bar by disavowing his intent to overrule an unfavorable state-court decision. *See Behr*, 8 F.4th at 1211 ("[*Rooker-Feldman*] bars all appeals of state court judgments—whether the plaintiff admits to filing a direct appeal of the judgment or tries to call the appeal something else.").

The parties quibble over *Rooker-Feldman*'s scope and its application to this case. The Defendants say that Johnson's injuries—as pled in the Amended Complaint—are all "based on [an] alleged improper foreclosure" and that Johnson's true aim is to "[undo] the foreclosure process." Motion at 5–6. Johnson pushes back, saying that his Amended Complaint focuses *solely* on the Defendants' "fraudulent post-judgment actions" (*i.e.*, "acts [that] are independent of the foreclosure judgment"), such as the "Defendants' fraudulent and racketeering conduct," "filing false documents," "and using coercive tactics to evict Plaintiff." Response at 3. To determine whether the *Rooker-Feldman* doctrine applies here, we must see if "each individual claim requires review and rejection of a state court judgment." *Behr*, 8 F.4th at 1213. While none of the parties have it quite right, we mostly agree with the Defendants because three of Johnson's four counts (Counts I, II, and IV) are directly traceable to an injury that was allegedly caused by a final state-court judgment. *Cf. Efron*, 110 F.4th at 1236 ("Whether a state court judgment caused the plaintiff's injury remains the question for a federal court regardless of the form in which the plaintiff brings his or her claims.").

We'll start with Johnson's civil RICO claim (Count I). In this count, Johnson accuses the

8

Defendants of engaging in a common enterprise to "defraud[ ] Plaintiff of his rightful property" by "filing fraudulent foreclosure claims[,]" "creating and submitting false legal documents[,]" "engaging in wire and mail fraud to mislead courts and Plaintiff[,]" "manipulating bankruptcy proceedings to further obstruct Plaintiff's defenses[,]" and "obstructing justice by preventing the Plaintiff from adequately defending his rights." Amended Complaint at 28. According to Johnson, because of these fraudulent acts, the Defendants were successful in foreclosing on and seizing Johnson's "rightful property[.]" *Ibid.* Although the Defendants say that Johnson's civil RICO claim seeks to "[undo] the foreclosure process," we actually think they've understated the scope of Johnson's requested relief. Motion at 5–6. Over the past seven years, at least three state-court cases have determined that Johnson wasn't the rightful owner of the Property: the original foreclosure action, an unlawful-detainer case, and a quiet-title action. *See generally* Amended Complaint at 6–26; *see also Hillquist*, 2025 WL 295156, at *5 & n.2 (explaining Johnson's state-court litigation history).[6] Johnson claims that the Defendants' "fraudulent filings" infected all these state-court proceedings—not just the foreclosure case. Amended Complaint at 28. Given this background, the *Rooker-Feldman* doctrine plainly bars Johnson's civil RICO claim. "[T]he source[s] of the plaintiff's injury" are the various state-court judgments that first foreclosed on the Property and then ejected Johnson once new owners purchased it. *Efron*, 110 F.4th at 1236.

---

[6] And these three state-court cases don't even paint a complete picture of Johnson's numerous failed attempts to regain control of the Property. In addition to the bankruptcy case and the state-court criminal case we've previously mentioned, *see ante*, at 2–3, Johnson has filed at least four actions in this Court (not including this one) *either* challenging the validity of his state-court proceedings *or* alleging that the individuals participating in those state-court proceedings were violating his rights. *See Bank of N.Y. Mellon*, 2022 WL 6575784, at *1 (remanding Johnson's foreclosure case to state court and directing the Clerk "not [to] accept any further *pro se* filings from Johnson that seek removal of the Bank's state foreclosure case against him"); *Miami-Dade Cnty. Sheriff*, 2022 WL 14813741, at *3 (dismissing complaint that sought "to prevent the state court foreclosure post-judgment proceedings from occurring"); *Hillquist*, 2025 WL 295156, at *1 ("Our Plaintiff, Levar Curtis Johnson, has bought this civil-rights action under 42 U.S.C. §§ 1983, 1985(3), and 1986 against twenty different defendants for participating in a coordinated and deliberate conspiracy to deprive Johnson of his constitutionally protected rights." (cleaned up)).

Johnson argues that his Amended Complaint doesn't "seek to overturn a state court judgment" but is instead challenging "independent wrongful acts"—such as the "filing of a fraudulent quit claim deed" and the Defendants' use of "coercive tactics to evict Plaintiff"—that occurred *after* the foreclosure. Response at 3. But Johnson has been clear that the injury he suffered at the hands of the Defendants is that they "unlawfully acquire[d] Plaintiff's property." Amended Complaint at 29. So, while Johnson might not be asking us to vacate the state court's foreclosure judgment, a judgment in his favor would *necessarily* require us to find that the foreclosure (and the post-foreclosure collateral proceedings) unlawfully removed Johnson from the Property. *See Behr*, 8 F.4th at 1212 ("[C]ourts [should] not exercise jurisdiction over the appeal of a state court judgment simply because the claimant does not call it an appeal of a state court judgment."); *Dixon v. Abruzzo*, 2024 WL 4132504, at *1 (11th Cir. Sept. 10, 2024) ("[A]lthough the Dixons did not expressly ask the district court to overturn the foreclosure judgment, the claims are premised on the theory that the defendants wrongly sold the property following the foreclosure because the Dixons were the rightful owners. The district court did not err in ruling it lacked jurisdiction under *Rooker-Feldman*.").[7] Since Count I is a thinly-veiled attempt to relitigate several state-court judgments—all of which concluded that Johnson no longer owns the Property—*Rooker-Feldman* bars this claim.

We can dispose of Counts II and IV for similar reasons. Count II is a quiet-title claim meant to "affirm [Johnson's] ownership of the [Property]." Amended Complaint at 36. Of course, since several state-court judgments (including a state-court quiet-title action) have concluded that Johnson *doesn't* own the Property, his quiet-title claim here (which asks us to find that he *does* own the Property)

---

[7] *See also, e.g.*, *Figueroa v. MERSCORP, Inc.*, 477 F. App'x 558, 560–61 (11th Cir. 2012) ("The state court judgment formed the basis of or was intertwined with the injury complained of in Figueroa's instant compliant: that 'he lost his one-half interest in his property and home' because of an improper foreclosure proceeding. . . . Figueroa also sought, in effect, to have the district court 'review and reject' the state court proceedings because his federal RICO claims could only succeed if the state court's foreclosure judgment was in error.").

necessarily requires us to overturn those contrary state-court judgments. *See Dixon*, 2024 WL 4132504, at *1 ("The Dixons' requests to quiet title and declare them the lawful owners of the property involved in the foreclosure proceedings are barred under *Rooker-Feldman* because they asked the district court to reject the state foreclosure judgment."); *Peers v. Select Portfolio Servicing, Inc.*, 2020 WL 5203517, at *2 (M.D. Fla. Sept. 1, 2020) (Jung, J.) ("Here, this Court lacks subject-matter jurisdiction over Plaintiff's claim to quiet title. Plaintiff seeks to re-litigate the very issue decided by the state court: whether she has title to the property in question. . . . Accordingly, *Rooker-Feldman* bars the Plaintiff from relitigating the same issue in federal court, and the claim to quiet title must be dismissed for lack of subject-matter jurisdiction.").

Count IV of the Amended Complaint alleges that the Defendants "committed fraud by using false documents, including a fraudulent power of attorney and fraudulent deeds, to initiate improper foreclosure actions and seize control of Plaintiff's property." Amended Complaint at 41. Again, since this fraud claim necessarily requires us to find that the adverse state-court judgments were void because they were obtained through fraudulent means, this count is also barred by *Rooker-Feldman*. *See, e.g., Varela-Pietri v. Bank of Am., N.A.*, 2018 WL 4208002, at *3 (M.D. Fla. Sept. 4, 2018) (Merryday, J.) ("In sum, the fraud claim in this action appears a circuitous but unmistakable attempt to impugn the validity of the foreclosure judgment."); *Martinez v. Bank of Am., N.A.*, 2018 WL 5024178, at *4 (M.D. Fla. Oct. 17, 2018) (Covington, J.) ("Plaintiffs allege a scheme designed to facilitate BOA acquiring a foreclosure judgment. . . . [T]he fraud claim is barred by the *Rooker-Feldman* doctrine and the case is dismissed without prejudice for lack of subject matter jurisdiction."); *see also Nero v. Mayan Mainstreet Inv 1, LLC*, 2014 WL 12610668, at *7 (M.D. Fla. Nov. 13, 2014) (Smith, Mag. J.) (explaining that claims brought by "state-court losers seeking to recover for fraud that contributed to the opponent's victory in state court" are barred under *Rooker-Feldman* (citing *Nesses v. Shepard*, 68 F.3d 1003, 1004 (7th Cir. 1995))).

We come out the other way, however, on Count III. Unlike Counts I, II, and IV, the conduct at issue in Count III is Johnson's allegation that the Defendants "failed to honor their contractual obligations" by failing to "respond or adequately address" certain "private correspondence and fee schedules[.]" Amended Complaint at 39. Unlike Johnson's other claims, these alleged contractual breaches do not "invite" us to "review and reject[ ]" a state court's prior judgment because Johnson's alleged injury is independent of the foreclosure proceedings. *Behr*, 8 F.4th at 1214.

To summarize, then, Counts I, II, and IV of Johnson's Amended Complaint must be **DISMISSED** for lack of subject-matter jurisdiction under the *Rooker-Feldman* doctrine. *See Scott v. Frankel*, 606 F. App'x 529, 533 (11th Cir. 2015) ("But a *Rooker–Feldman* dismissal is a dismissal for lack of subject matter jurisdiction, and a dismissal for lack of subject matter jurisdiction is not a judgment on the merits and is entered without prejudice." (cleaned up)). But Count III is not a *de facto* appeal of a state-court loss, so it isn't barred by *Rooker-Feldman*.

## II.     Count III Must Be Dismissed

Having found that Count III survives *Rooker-Feldman*, we nevertheless agree with the Defendants that this claim must be dismissed under Rule 12(b)(6). "To prevail in a breach of contract action, a plaintiff must prove: (1) a valid contract existed; (2) a material breach of the contract; and (3) damages." *Deauville Hotel Mgmt., LLC v. Ward*, 219 So. 3d 949, 953 (Fla. 3d DCA 2017). Johnson says that at least three valid contracts were created when he unilaterally sent the Defendants "detailed written communications, setting forth demands, fee schedules, and requirements for the validation of claims and proper documentation related to the [P]roperty." Amended Complaint at 39; *see also* Response at 5 ("Plaintiff engaged Defendants through written correspondence, creating binding obligations."). The Defendants respond that these "contracts" were merely letters "stating terms and providing that the [Defendants] agreed [to those terms] if [they] failed to respond," and they add that their "silence does not ordinarily constitute acceptance of a contract." Motion at 8 (quoting *Quamina*

12

*v. U.S. Bank Nat'l Ass'n*, 2020 WL 9349559, at *3 (S.D. Fla. Dec. 24, 2020) (Ruiz, J.)).

The Defendants are exactly right. Johnson attached the "contracts" at issue here to his Amended Complaint as Exhibits 15, 25, and 26. *See* Amended Complaint at 40–41. Each of these communications contained a provision indicating that, if the Defendants failed to respond, they would be in "tacit agreement with all terms, conditions and stipulations herein[.]" Exhibit 15 [ECF No. 9-2] at 207; *see also* Exhibit 25 [ECF No. 9-3] at 84 ("In the event Respondent(s) fail to respond, they individually and collectively admit the statements and claims by tacit procuration[.]"); Exhibit 26 [ECF No. 9-3] at 167 (same). That's not how contracts work. "Unless the offeree agrees in advance, the offeror cannot, by the offer, define the form and manner of the offeree's acceptance. . . . [A]n offer made to another, either orally or in writing, cannot be turned into an agreement because the person to whom it is made or sent makes no reply, even though the offer states that silence will be taken as consent, for the offerer cannot prescribe conditions of rejection so as to turn silence on the part of the offeree into acceptance." *W. Constr., Inc. v. Fla. Blacktop, Inc.*, 88 So. 3d 301, 304-05 (Fla. 4th DCA 2012) (cleaned up).

Johnson made a similar argument in his civil-rights action, which is also pending before us. We rejected it there too, reasoning that:

> A common thread throughout Johnson's Complaint is his belief that several of the Defendants have already admitted to the alleged civil-rights violations by failing to respond to Johnson's 'self-executing private contracts'—copies of which have been attached to the Complaint. This is a tactic we've seen from other *pro se* litigants before—where the plaintiff will claim that the defendants admitted a whole host of damning accusations because they didn't 'sufficiently disavow' an 'affidavit' or 'contract' the plaintiff sent them. *Steven McArthur- Brooks Est. v. Moreno*, 2025 WL 30390, at *1 (S.D. Fla. Jan. 6, 2025) (Altman, J.). This theory is pure nonsense, so we won't give the Defendants' purported failure to respond to Johnson's 'self-executing private contracts' any weight. *See Price v. Lakeview Loan Serv., LLC*, 2021 WL 1610097, at *7 (M.D. Fla. Apr. 26, 2021) (Steele, J.) ("While Plaintiff argues that by leaving the Credit Agreement in Defendant's possession equates to acceptance, this cannot be true because absent specific indications of intent to accept an offer, an offeree's silence is not acceptance of an offer." (cleaned up)); *Orman v. Cent. Loan Admin. & Reporting*, 2019 WL 6841741, at *4 (D. Ariz. Dec. 16, 2019) ("It is a fundamental principle of contract law that silence does not constitute acceptance of a contract." (citing

13

RESTATEMENT (SECOND) OF CONTRACTS § 69 (1981))).

*Hillquist*, 2025 WL 295156, at *8 n.4 (cleaned up); *see also Quamina*, 2020 WL 9349559, at *3 ("Petitioner's 'tacit acquiescence' theory of contract formation is unavailing. It is a fundamental principle of contract law that silence does not ordinarily constitute acceptance of a contract."). In short, Johnson has failed to show that he entered into a valid contract with any of the Defendants—and we reject (again) his legally dubious theory of "tacit acceptance" or "tacit acquiescence." Since the Defendants cannot be liable for breaching a contract that doesn't exist, Count III must be **DISMISSED**.

\*   \*   \*

In the Eleventh Circuit, "a *pro se* plaintiff must be given *at least one chance* to amend the complaint before the district court dismisses the action with prejudice—at least, that is, where a more carefully drafted complaint might state a claim." *Silberman v. Miami-Dade Transit*, 927 F.3d 1123, 1132 (11th Cir. 2019) (emphasis added & cleaned up). But we need not grant leave to amend where amendment would be futile. *See Woldeab v. DeKalb Cnty. Bd. of Educ.*, 885 F.3d 1289, 1291 (11th Cir. 2018) ("But a district court need not grant leave to amend when . . . a more carefully drafted complaint could not state a claim." (cleaned up)). Leave to amend is futile "when the complaint as amended would still be properly dismissed[.]" *Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007).

We already gave Johnson an opportunity to amend, *see* Order to Amend [ECF No. 8], so we don't need to give him any more chances, *see Cornelius v. Bank of Am., NA*, 585 F. App'x 996, 1000 (11th Cir. 2014) ("Because Cornelius already had been given an opportunity to correct his pleadings, the judge was not required to give him another chance."). But the bigger problem for Johnson is that any future amendment would be futile. Counts I, II, and IV are plainly barred by the *Rooker-Feldman* doctrine, and no amendment can cure this jurisdictional deficiency. *See Flournoy v. Gov't Nat'l Mortg. Ass'n*, 156 F. Supp. 3d 1375, 1382 (S.D. Fla. 2016) (Gayles, J.) ("The Court finds that amendment

14

would be futile in light of the *Rooker–Feldman* jurisdictional defect[.]"). Count III must also be dismissed *with prejudice* and *without leave to amend* because "the underlying facts and circumstances" Johnson relies upon cannot support his argument that he formed a valid contract with the Defendants. *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1262 (11th Cir. 2004). Since all of Johnson's claims suffer from incurable defects, we won't grant him leave to amend.

## CONCLUSION

Accordingly, we **ORDER and ADJUDGE** that the Defendants' Joint Motion to Dismiss [ECF No. 34] is **GRANTED**. Counts I, II, and IV of the Amended Complaint are **DISMISSED without prejudice**. Count III of the Amended Complaint is **DISMISSED with prejudice**. All pending deadlines and hearings are **TERMINATED**, and any other pending motion is **DENIED as moot**. The Clerk shall **CLOSE** this case.

**DONE AND ORDERED** in the Southern District of Florida on February 3, 2025.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:   Levar Curtis Johnson, *pro se*
      counsel of record